1   James M. Hanavan, State Bar No. 66097
2   Kristen E. Drake, State Bar No. 202827
    CRAIGIE, McCARTHY & CLOW
3   540 Pacific Avenue
    San Francisco, CA 94133
4   Telephone: (415) 732-7788
    Facsimile: (415) 732-7783

5

6   Attorneys for Defendants
    SAFER TECHNOLOGIES, INC.,
7   CERMA TECHNOLOGY, INC.,
    GEORGE ACKERSON, MARY STRANAHAN,
8   NICHOLAS STREIT and EDWARD HALBACH

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                         SAN JOSE DIVISION

12  MOTOR WORKS LLC,                    Case No.: 08-CV-03608 JW

13              Plaintiff,              **MOVING PARTIES' REPLY BRIEF IN
                                        SUPPORT OF MOTION FOR LEAVE TO
14      vs.                             FILE COUNTERCLAIMS**

15  SAFER TECHNOLOGIES, INC., CERMA     Date:  March 8, 2010
    TECHNOLOGY, INC., GEORGE            Time:  9:00 a.m.
16  ACKERMAN, MARY STRANAHAN,           Courtroom: 8, 4th Floor
    NICHOLAS STREIT, TIM STREIT and     Judge: Hon. James Ware
17  EDWARD HALBACH,

18              Defendants.

19

20

21  I.    **INTRODUCTION**

22          There is no nice way to put it—plaintiff's principal John Murray is a con man and this

23  lawsuit is a sham.  Murray purchased the product at issue from its German manufacturer or one of

24  the manufacturer's distributors, called it "STM-3" and then sold it to moving parties and others at

25  an enormous markup.  Moving parties were subjected to this scam until they realized what

26  Murray was up to, stopped buying the product from him and started purchasing the product from

27  a different distributor.

28          Murray has a track record for pulling these types of patent infringement scams—he did

CRAIGIE, McCARTHY & CLOW
Telephone: 415/732-7788 • Facsimile: 415/732-7783

CRAIGIE, McCARTHY & CLOW
Telephone: 415/732-7788 · Facsimile: 415/732-7783

1    the same thing with liquid ink, was sued by the real patent holder in South Carolina and forced to

2    enter into a Consent Decree.  In fact, Murray cannot verify discovery responses, appear for

3    deposition or appear at trial without either telling the truth—and admitting he posted the articles

4    on the "Ripoff Report" website and has been purchasing a product from a third party and then

5    fraudulently claiming he invented it—or committing perjury.  Murray will not provide verified

6    discovery responses because to do so under penalty of perjury would constitute mail and wire

7    fraud.

8         Plaintiff's entire lawsuit is a sham.  Nonetheless, as plaintiff continues to press on, moving

9    parties have been compelled by economic necessity to request leave to litigate their counterclaims

10   as compulsory counterclaims are barred if not asserted and efficiency requires all claims being

11   litigated in the same action.  Any alleged and unsupported prejudice to plaintiff is outweighed by

12   the compulsory nature of the counterclaims as well as the recent defamatory postings, apparently

13   authored by plaintiff's principal, John Murray.

14   **II.    ARGUMENT**

15        **A.    Plaintiff's Entire Lawsuit Is A Sham**

16             **1.    The Charging Allegations Of Plaintiff's Complaint Contend Moving
                       Parties Have "Reverse Engineered" The Subject Product**

17

18        John Murray is the owner/operator of plaintiff "Motor Works LLC"—Motor Works is

19   simply an entity created by and for Murray.  Murray's operative charging allegations are set forth

20   in numbered paragraphs 10 and 11 of his complaint, wherein he states he "has recently learned

21   that [moving parties] are using confusing similar marks and marks owned by" Murray "for oil

22   additives."  [Complaint at ¶ 10.]  On information and belief, Murray "alleges that at least [moving

23   parties] manufacture or have manufactured and sell additives *improperly reversed engineered* in

24   violation of a distribution agreement between" Murray "and [moving party] CERMA

25   TECHNOLOGY, INC."  [Complaint at ¶ 11, emphasis supplied.]

26        Finally, again on information and belief, Murray alleges "that at least [moving parties] are

27   a direct competitor of" Murray "in this respect."  [Complaint at ¶ 11.]  There are no other

28   charging allegations against moving parties or any of the remaining defendants.  Accordingly, on

1    the pending complaint, Motor Works/Murray must show that there was a product owned by

2    Motor Works/Murray which was "reversed engineered" by moving parties.

3          But, this is impossible.  Murray does not own any product or the right to sell any product

4    that could have been "reverse engineered" by moving parties.  He purchased the product at issue

5    from BYK-Chemie GmbH, a division of the ALTANA Group in Wesel, Germany or one of its

6    many American distributors. Moving parties acquired their only product, sold under their

7    registered trade name "CERMAX," in exactly the same way.

8          2.     **Plaintiff Is Perpetuating A Fraud On This Court By Claiming It is The**
               **Manufacturer Of The Product When In Fact It Purchases The**
9               **Product From BYK-Chemie GmbH**

10         BYK-Chemie GmbH, a division of the ALTANA Group in Wesel, Germany, sells the

11   product BYK-333.  A data sheet produced by the German company entitled "Data Sheet PS2"

12   describes the BYK-333 product.  [Exhibit "A" to N. Streit Reply Declaration.]  Murray purchases

13   the BYK-333 product.  On February 12, 2008, Murray wrote to the BYK-333 distributor that "at

14   this point we need _*every drop of byk-333*_ you can get us !!!" [Exhibit "B" to N. Streit Reply

15   Declaration.]  On February 8, 2009, Murray wrote to the BYK-333 distributor that "we would

16   like to arrange the availability of BYK-333 … for the next 3 months to be 1- 55 gal drum per

17   month, after the 3 months this would increase to 2- 55 gal drums per month, within 1 year I could

18   see a usage of 5-10 55 gal drums per month." [Exhibit "C" to N. Streit Reply Declaration.]

19         Under the name "STM-3", Murray sold the BKY-333 he was buying from the German

20   company or one of its distributors directly to moving parties.  On March 8, 2008 at 9:45 a.m.,

21   defendant Ed Halbach e-mailed Murray a purchase order for 5 gallons of "STM-3".  [Exhibit "D"

22   to N. Streit Reply Declaration.]  That same day, at 2:37 p.m., John Murray wrote to a Jon

23   Saferstein that he had "shipped 5 gal of [BYK] 333" to moving parties.  [Exhibit "E" to N. Streit

24   Reply Declaration.]  Further, Dr. Alvah Bittner, moving parties' expert, verifies that the two

25   products, Murray's "STM-3" and BYK-Chemie GmbH's "BYK-333," are one and the same.

26   [See Declaration of Dr. Alvah Bittner.]

27         Murray's lawsuit is a fraud.  He is claiming that moving parties "reverse engineered" a

28   product that Murray in fact purchased directly from a German company or one of its many

CRAIGIE, McCARTHY & CLOW
Telephone: 415/732-7788 - Facsimile: 415/732-7783

Defendants' Reply Brief in Support of Motion for
Leave to File Counterclaims

1    distributors world-wide.  Murray did not invent the subject product, is not the manufacturer of

2    subject product and has no rights in the subject product entitling him to recovery from moving

3    parties or anyone else.

### 3.   Plaintiff And Defendant Sell The Same Product Purchased From The Same Manufacturer

5    As established by the foregoing communications and Murray's rejected patent

6    applications, Murray apparently buys the relevant product from one of the German company's

7    American distributors, and that same product is readily available for purchase to anyone from

8    numerous sources.  Cerma Technology, Inc. ("CTI") was originally purchasing the German

9    company's chemical additive, BYK-333, from Murray based upon Murray's false representation

10   that he had invented the chemical additive and that it could only be obtained from him.

11   [Declaration of Nicholas Streit ("Streit Decl.") at ¶¶ 13-15 and attached exhibits; Declaration of

12   James M. Hanavan ("Hanavan Decl.") at ¶ 5.]

13   When the truth was uncovered, CTI began purchasing BYK-333 from one of the German

14   manufacturer's United States' wholesale distributors.  As Mr. Streit explains, CTI has never had

15   any oral or written agreement to purchase BYK-333 exclusively from Murray, and has always

16   sold its product under the name it created, "CERMAX," a trade name registered and now owned

17   by moving party Safer Technologies, Inc.  Murray had nothing to do with the creation of the

18   CERMAX name and distinctive mark, although he did fraudulently inflate the price of the

19   German chemical additive sold under that name by moving parties and sell that chemical additive

20   to them as his "invention."  [Streit Decl. at ¶¶ 2-15 and attached exhibits; Hanavan Decl. at ¶ 6;

21   Declaration of George Ackerson ("Ackerson Decl.") at ¶¶2-7.]

22   Murray has no patent, has no patent pending, and has no basis for claiming that he has any

23   financial interest whatsoever in any product ever sold by moving parties.  Despite the fact that

24   moving parties and Murray are simply selling BYK-333 under different trade names to their

25   respective customers, Murray has continued to claim that he invented BYK-333 and to interfere

26   with moving parties' business operations.  Murray has failed and refused to respond to any of

27   defendants' discovery, and has effectively prevented moving parties from obtaining the

28

CRAIGIE, McCARTHY & CLOW
Telephone: 415/732-7788 · Facsimile: 415/732-7783

4

1    information needed to take his deposition or otherwise prepare their defense.  [Streit Decl. at ¶¶ 2-
2    15 and attached exhibits; Ackerson Decl. at ¶¶2-7; Hanavan Decl. at ¶ 7.]

3         **B.      Murray is a Con Man—He Pulled the Same Scheme with Liquid Ink**

4         In March of 2005, John Murray was sued in South Carolina by plaintiff Sawgrass
5    Technologies, Inc., the holder of a patent for printing certain liquid sublimation inks by means of
6    an ink jet printer.  The complaint alleged that Murray, his wife, entities created by Murray and
7    another individual "caused to be manufactured and are selling and using a liquid sublimation ink"
8    in violation of Sawgrass Technologies' patent.  Sawgrass Technologies' further alleged that
9    Murray and the other defendants were "teaching and encouraging others to use the Defendants'
10   liquid sublimation inks to practice the methods and processes of the Sawgrass patent."
11   [Complaint at ¶¶ 13, 15, Exhibit "F" to N. Streit Reply Declaration.]

12        John Murray and his wife settled the case by entering into a Consent Order.  In that order,
13   they agreed that if Sawgrass Technologies' litigated the claims "defendants would potentially
14   have substantial liability for damages stemming from their prior commercial involvement with
15   liquid ink suitable for use in ink jet printers…"  Further, presumably aware of Murray's
16   propensity to create various companies for illicit purposes, the Consent Order was drafted such
17   that Murray agreed that the prohibition against making, using or selling a liquid ink suitable for
18   use in ink jet printers applied to "any entity owned or controlled by them [defendants]."  [Consent
19   Order at ¶¶ 1, 3, Exhibit "G" to N. Streit Reply Declaration.]

20        **C.      Plaintiff's Opposition Brief Raises Nothing But Red Herrings**

21        **1.      Good Cause Exists for Granting Leave To File Counterclaims And
22                  Outweighs Any Claimed Prejudice To Plaintiff**

23        Plaintiff Motor Works' and Murray's conduct is outrageous and continues to cause
24   severe damage to moving parties.  Moving parties' counterclaims are a mixture of compulsory
25   and permissive counterclaims.  With respect to moving parties' compulsory counterclaims, those
26   claims are barred if not asserted here as any judgment precludes moving parties' from
27   maintaining a later action on the omitted claim.  *Hydranautics v. FilmTec Corp.* (9th Cir. 1995)
28   70 F.3d 533, 536; *Publicis Communication v. True North Communications Inc.* (7th Cir. 1997)

CRAIGIE, McCARTHY & CLOW
Telephone: 415/732-7788 • Facsimile: 415/732-7783

5

CRAIGIE, McCARTHY & CLOW
Telephone: 415/732-7788 · Facsimile: 415/732-7783

1    132 F.3d 363, 365–366.  Further, it is much more efficient for the parties and this Court to resolve

2    all the present claims between the parties in a single lawsuit.  Any claim of prejudice to Motor

3    Works/Murray is far outweighed by the severity of the consequences in not asserting compulsory

4    counterclaims as well as considerations of efficiency.

5

6    **2.    Moving Parties' Did Not Immediately Seek Leave to File Counterclaims As They Anticipated Plaintiff Would Dismiss This Case Soon After Discovery Began, And In Any Event Prior To Trial As Murray Cannot Prove His Claims Without Committing Perjury**

7

8    Motor Works/Murray puts great emphasis on the fact that in Case Management

9    Conference Statements moving parties stated that they did not anticipate any amendments of the

10   pleadings.  This is true—moving parties did not anticipate seeking leave to file counterclaims.  To

11   the contrary, moving parties expected plaintiff to dismiss its case after moving parties served it

12   with discovery as Murray cannot verify discovery under penalty of perjury without committing

13   wire or mail fraud once that discovery is served.

14   To date in this case, Murray has not verified any discovery and has yet to appear

15   for his deposition.  He cannot appear at trial or for a deposition without committing perjury

16   regarding the "reverse engineering" claim and authorship of the "Ripoff" reports.  Accordingly,

17   moving parties did not seek leave to file counterclaims at an earlier date as they did not anticipate

18   this case would proceed much beyond service of discovery.  Further, moving parties could not

19   have anticipated Murray's posting of various false and fraudulent entries on the "Ripoff Report"

20   website, the most recent of which were posted on December 21, 2009 and January 21, 2010.

21   **3.    Cerma Technology, Inc. Does Exist as a Separate Legal Entity**

22   Plaintiff argues that moving parties have represented that Cerma Technology, Inc.

23   no longer exists as a separate legal entity.  While this statement was made in a Case Management

24   Conference Statement soon after moving parties' current counsel substituted into the case,

25   defendant Nicholas Streit has clarified the matter in his declaration.  He states that Cerma

26   Technology, Inc. is a wholly owned subsidiary of defendant Safer Technologies, Inc.  Mr. Streit

27   was a 50% owner of Cerma Technology, Inc., which was formed in September of 2006 and is

28   now a wholly owned subsidiary of defendant Safer Technologies, Inc., where Mr. Streit is the

6

1   Director of Operations.  [N. Streit Reply Declaration at ¶ 1.]

2   **III.    CONCLUSION**

3          Plaintiff Motor Works/Murray's lawsuit is a sham and a fraud.  Nonetheless, as Motor

4   Works/Murray is proceeding, moving parties respectfully request that their motion be granted.

5

6   Dated: February 22, 2010                          CRAIGIE, McCARTHY & CLOW

7

8

9                                                              _/s/ James M. Hanavan_____

10                                                             By: James M. Hanavan
                                                               Attorneys for Defendants
11                                                             SAFER TECHNOLOGIES, INC.,
                                                               CERMA TECHNOLOGY, INC.,
12                                                             GEORGE ACKERSON,
                                                               MARY STRANAHAN,
13                                                             NICHOLAS STREIT and
                                                               EDWARD HALBACH

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Reply Brief in Support of Motion for
Leave to File Counterclaims

CRAIGIE, McCARTHY & CLOW
Telephone: 415/732-7788 • Facsimile: 415/732-7783